# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | |
|---|---|
| **KENNETH RAY CARROLL,** ) | |
| ) | |
| Plaintiff, ) | Case No. 2:11CV00022 |
| ) | |
| v. ) | **OPINION** |
| ) | |
| **MICHAEL J. ASTRUE,** ) | By: James P. Jones |
| **COMMISSIONER OF** ) | United States District Judge |
| **SOCIAL SECURITY,** ) | |
| ) | |
| Defendant. ) | |

*Roger W. Rutherford, Wolfe, Williams, Rutherford & Reynolds, Norton, Virginia, for Plaintiff; Eric P. Kressman, Regional Chief Counsel, Region III, Maija DiDomenico, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this social security case, I affirm the final decision of the Commissioner.

I

Plaintiff Kenneth Ray Carroll filed this claim challenging the final decision of the Commissioner of Social Security (the "Commissioner") denying his claim for disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act (the "Act"). 42 U.S.C.A. §§ 401-433

(West 2011), 1381-1383f (West 2003 & Supp. 2011).  Jurisdiction of this court exists pursuant to 42 U.S.C.A. §§ 405(g) and 1383(c)(3).

Carroll filed applications for benefits on June 18, 2007, claiming disability since April 15, 2006.  The claims were denied initially and on reconsideration.  A hearing was held before an administrative law judge ("ALJ") on August 5, 2009.  At the hearing Carroll, represented by counsel, and an independent vocational expert testified.  The ALJ denied his claim and that decision became final when the Social Security Administration Appeals Council denied his request for review.  Bowen then filed his Complaint in this court, objecting to the Commissioner's final decision.

The parties have filed cross motions for summary judgment, which have been briefed.  The case is ripe for decision.

II

Carroll was born on July 21, 1961, making him a younger individual under the regulations at the time of the ALJ's decision.  20 C.F.R. §§ 404.1563(c), 416.963(c) (2011).  He completed the eighth grade, can read and write (but not well) and can add and subtract.  He previously worked as a general laborer, a lumber stacker, and as a heat pump installer.

Carroll does not challenge the ALJ's determination as to his physical impairments. Rather, he argues that the ALJ lacked substantial evidence to support her conclusion that his mental impairments were not disabling. For that reason, this opinion will address only the aspects of his mental impairments.

From October 2005 through November 2007, Carroll was treated by Marissa Vito Cruz, M.D., at Stone Mountain Health Services. He saw Dr. Vito Cruz routinely, approximately every 1-3 months. In October 2005, Carroll presented no mental health complaints. Dr. Vito Cruz noted that he did not appear depressed and was alert and oriented x3. In December 2005, he discussed problems he was having with work and with his family. Dr. Vito Cruz determined situational depression and prescribed sleep medication to help both that issue and sleep problems.

In February 2006, Carroll reported feeling increasingly anxious and nervous because of the various things going on in his life. Again, Dr. Vito Cruz assessed situational stress and prescribed Lexapro. She noted no abnormal mental status findings. In May 2006, Carroll said that his nerves were acting up and that his stuttering was becoming more prominent. Dr. Vito Cruz observed that he appeared to be very nervous and assessed him as having depression/anxiety with increased situational stress. In November 2006, Carroll said that he was not as stressed as he was before and that the medication was keeping him "well controlled." (R. at

300.) However, he said that he was still having a lot of problems with his nerves and was quite anxious and somewhat depressed. He also said that he was trying to find work as a painter. Dr. Vito Cruz assessed depression/anxiety and referred Carroll to a social worker for further evaluation of his mental health. There is no indication in the record that he followed through with this referral. Dr. Vito Cruz continued his medication regime.

In December 2006, Carroll's emotional health was "improved dramatically." (R. at 297.) He had started a job which Dr. Vito Cruz noted helped a lot "with his feeling of self worth. (R. at 296.) She also observed that he did not appear to be depressed and was alert and oriented x3. In January 2007, Carroll informed Dr. Vito Cruz that he had stopped taking his Zoloft because he could not tell any difference in his nerves. She noted that he seemed to be doing much better with regard to his mental health but that he appeared slightly anxious and nervous. In February 2007, Carroll was under increased stress due to the death of his mother. Dr. Vito Cruz apparently prescribed him Klonopin.

In June 2007, Carroll told Dr. Vito Cruz that he was doing quite well and her observations of him supported that report. She noted he did not appear to be depressed. She refilled his Klonopin prescription.

In September 2007, Carroll presented for treatment to Lisa Deeds, F.N.P., also with Stone Mountain Health Services. He informed her that another doctor

had seen him after his last appointment with Dr. Vito Cruz and had stopped his Lortab and Klonopin. Since then, he reported increasing nervousness and other symptoms. Deeds prescribed him Klonopin but noted that she would try to taper him off of it. He returned for a follow up in October 2007 and reported feeling much better since being back on his medication. Deeds noted that his mood was much better since the last appointment. She prescribed a reduced dosage of Klonopin and started Carroll on Amitriptyline, an anti-depressant. She also prescribed Lortab.

When Carroll returned in November, he stated that he was having greatly increased anxiety as a result of both a reducing of the medication and increased stressors at home. He apparently could not tolerate the Amitriptyline. Deeds adjusted his medication, trying different anti-anxiety medications that were non-addictive. At his December appointment, he reported that he had stopped taking one of the anxiety medications she had prescribed and that he was experiencing a high level of anxiety. He had a follow up appointment later in December at which he said that his nerves were doing much better after being back on Klonopin. She changed his pain medication to Percocet.

In January 2008, Carroll reported that he as experiencing increased agitation on the Percocet. Deeds switched his pain medication again and re-prescribed the Percocet. At a later appointment in January, Deeds observed that Carroll's

"anxiety and generalized behavior have been much improved since I have been seeing him." (R. at 488.) In March, he reported that he felt much better being back on the Klonopin. However, in April 2008, Carroll said he was feeling more depressed because of his pain and inability to work. Deeds prescribed Celexa for the depression. In June 2008, Carroll said his mood was a little better and requested to be switched to Lexapro because of side effects with Celexa. Deeds prescribed Lexapro and continued his Klonopin. Although Carroll apparently stopped taking the Lexapro at some point, in September 2008 he had no mental health concerns. In December 2008, he reported that he was doing very well.

It was not until May 2009 that Carroll again reported anxiety because he had moved from the country into town. Deeds observed a depressed affect and decided to try him on Cymbalta.

On July 6, 2009, Deeds completed a Mental Residual Functional Capacity Questionnaire. She stated that Carroll was diagnosed with general anxiety disorder and depression and that he had a good response to Klonopin. She opined that he would be unable to meet competitive standards in certain areas, including maintaining regular attendance and punctuality, sustaining an ordinary routine, performing at a consistent pace without an unreasonable number / length of breaks, traveling in unfamiliar places, and using public transportation. She felt that his prognosis was stable but felt that his anxiety would be exacerbated in a work

setting. She also felt that he would be absent from work for more than four days a month.

In February 2008, Carroll underwent a consultative examination with Kevin Blackwell, D.O. Dr. Blackwell stated that Carroll was "alert, cooperative and oriented x3, with good mental status." (R. at 435.)

On August 22, 2007, Howard Leizer, Ph.D., a state agency psychologist, reviewed Carroll's file. He opined that Carroll's mental impairments were not severe and that Carroll would experience only mild limitations in activities of daily living, social functioning, and concentration, persistence or pace. He also noted the record indicated no episodes of decompensation. Dr. Leizer further observed that Carroll's anxiety and depression seemed to be largely circumstantial and that Carroll would be capable of all levels of unrestricted substantial gainful activity. On March 20, 2008, Joseph Leizer, Ph.D., another state agency psychologist, reviewed the record and affirmed Dr. Howard Leizer's conclusions. He noted that though the record showed that between May 2005 and June 2007, Carroll suffered some periodic and situational anxiety and depression, by June 2007 Carroll was doing well.

At his hearing before the ALJ, Carroll testified that though he gets stressed out and feels depressed, he has not seen a counselor or psychiatrist because he does not have insurance for that. He also has never had to go to the hospital or

emergency room because of his depression. In the hypothetical presented to the vocational expert, the ALJ included a limitation of simple, routine, repetitive and unskilled work involving only occasional interaction with the public. Based on that and the other hypothetical limitations, the vocational expert testified that there were a significant number of unskilled, light jobs existing in the national economy.

After a careful review of the record, the ALJ concluded that Carroll's degenerative changes in the lumbar spine, other arthralgias, depression and anxiety were severe impairments but that these impairments, either singly or in combination, did not meet or medically equal any of the listed impairments. After finding that Carroll could perform a reduced range of light work and that there were a significant number of jobs in the national economy which Carroll could perform, the ALJ concluded he was not disabled.

Carroll submitted records from Lee County Behavioral Health Services to the Social Security Administration Appeals Council on January 10, 2011. The records are dated between August 2010 and January 2011. Deeds referred Carroll to the clinic after he experienced increased mental health symptoms with the death of his brother. The examiner assessed major depressive disorder and assigned a Global Assessment of Functioning ("GAF") score of 50. Between September 2010 and January 2011, Carroll attended four counseling sessions and either canceled or failed to attend five appointments. At every visit, Kathleen O'Dell, L.P.C., noted

that he was neatly groomed, had logical thought process, a depressed mood and affect, but within normal limits, and no suicidal or homicidal ideations. They discussed his depressed feelings and worked on problem-solving techniques.

For the reasons below, I find that substantial evidence supports the ALJ's decision.

### III

The plaintiff bears the burden of proving that he is under a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The standard for disability is strict. The plaintiff must show that his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. §§ 423(d)(2)(A) (2011), 1382c(a)(3)(B).

In assessing disability claims, the Commissioner applies a five-step sequential evaluation process. The Commissioner considers whether the claimant: (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or equals the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, whether he could perform other work present in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4),

416.920(a)(4) (2011).  If it is determined at any point in the five-step analysis that the claimant is not disabled, the inquiry immediately ceases.  *Id*.  The fourth and fifth steps of the inquiry require an assessment of the claimant's residual functional capacity (" RFC"), which is then compared with the physical and mental demands of the claimant's past relevant work and of other work present in the national economy.  *Id.*; *Johnson v. Barnhart*, 434 F.3d 650, 653-54 (4th Cir. 2005).

In accordance with the Act, I must uphold the Commissioner's findings if substantial evidence supports them and the findings were reached through application of the correct legal standard.  *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation marks and citation omitted).  Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance."  *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).  It is the role of the ALJ to resolve evidentiary conflicts, including inconsistencies in the evidence.  *Seacrist v. Weinberger*, 538 F.2d 1054, 1056-57 (4th Cir. 1976).  It is not the role of this court to substitute its judgment for that of the Commissioner.  *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

Carroll argues that the ALJ's opinion is not supported by substantial evidence because the ALJ failed to accord the proper weight to Deeds' July 2009

evaluation of effect Carroll's mental impairments would have on his ability to work. Because Deeds was a long-time treating source, Carroll asserts, her opinions regarding his mental impairments deserved great weight and had such weight been given, a finding of disability could have been reached.

The ALJ was not required to adopt Deeds' opinion as to Carroll's mental health limitations when formulating the RFC. *See* 20 C.F.R. §§ 404.1527(e)(2-3), 416.927(e)(2-3) (2011). The ALJ determines a claimant's RFC based upon her review of the entire record, including the objective medical evidence, opinion evidence and testimony. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a) (2011). The ALJ's determination of the weight to give any medical source opinion, whether from an acceptable medical source or not, depends on several factors, including the consistency and supportability of the opinion. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d) (2011).

The ALJ did not reject Deeds' opinion as to Carroll's mental limitations. Rather, he considered her report and her treatment notes and based upon apparent inconsistencies in the report, he gave her medical opinion as to the extent of Carroll's limitations less weight. That he considered her treatment notes and gave some weight to her opinion is reflected in his conclusion that Carroll's anxiety and depression were severe impairments and in the limitations he imposed on the RFC. Substantial evidence supported this approach. The record shows that Carroll has

suffered from anxiety and depression, which is exacerbated by situation stressors. Chronic anxiety appears to be the more significant of these two impairments. Both the anxiety and the depression responded to treatment with medication. The anxiety, in particular, responded well to treatment with Klonopin. *See* 20 C.F.R. §§ 404.1530, 416.930 (2011). *See also Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling.") Under treatment, there is little evidence that Carroll's anxiety impairs him in any real way. He presented minimal complaints regarding mental health to his treatment providers. He was able to care for his personal needs, prepare simple meals, be outside, pay bills, watch television, and spend time with family.

Further, Deeds' own treatment notes did not show any significantly abnormal mental status findings. Although Deeds at times noted that Carroll was anxious or had a depressed affect, the overall trajectory of his treatment was one of improvement. Especially when treated with Klonopin, Carroll generally reported an improved mood and outlook. In her report, Deeds herself concluded that Carroll's prognosis was stable. This evidence undermines Deeds' seriously restrictive limitations as laid out in the report and supports the ALJ's conclusion as to Carroll's RFC.

Carroll also argues that the ALJ should have obtained a consultative examination on his mental impairments. The decision to get a consultative examination lies with the Commissioner. The regulations provide that the Commissioner may arrange for an examination or test "[i]f your medical sources cannot or will not give us sufficient medical evidence about your impairment for us to determine whether you are disabled . . . ." 20 C.F.R. §§ 404.1517, 416.917 (2011). In this case, the record was sufficient for the ALJ to make a conclusion as to Carroll's mental limitations. In addition to the treatment notes from Dr. Vito Cruz and Deeds, the record contained two opinions from state agency psychologists concluding that Carroll's mental impairments were not severe and caused only mild limitations and no episodes of decompensation. Considering the breadth of evidence indicating that Carroll's mental impairments were not severe, the ALJ was not in error for failing to get a consultative examination.[1]

---

[1] The additional records submitted to the Appeals Council do not disturb the conclusion that the ALJ's decision was supported by substantial evidence. *See Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 95-96 (4th Cir. 1991) (noting that the court must consider the entire record, including additional evidence submitted to the Appeals Council, when reviewing the ALJ's decision). The records submitted are not material such that the ALJ's decision "might reasonably have been different." *See Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (quotation marks and citation omitted). The records further support the evidence in the record that Carroll's anxiety is exacerbated by situational stressors, such as his brother's death. This does not change the overall conclusion that his anxiety and depression are treatable and do not impose more than mild limitations on his ability to function.

IV

For the foregoing reasons, the plaintiff's Motion for Summary Judgment will be denied, and the defendant's Motion for Summary Judgment will be granted. A final judgment will be entered affirming the Commissioner's final decision denying benefits.

DATED:   February 14, 2012

/s/  James P. Jones
United States District Judge